TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-10-00004-CV




Kimberly A. Finder, M.D., Appellant

v.

Texas Medical Board, Appellee




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-08-004200, HONORABLE RHONDA HURLEY, JUDGE PRESIDING


 
M E M O R A N D U M O P I N I O N

                        Appellant Kimberly Finder, M.D., appeals a district court judgment affirming a final
order of the Texas Medical Board (the “Board”) finding her in violation of the Board’s rules
prohibiting false, misleading, or deceptive physician advertising and imposing a $5,000 disciplinary
penalty against her. In four issues, Dr. Finder contends that the district court erred in affirming the
Board’s final order. Because we find no error in the Board’s final order and we conclude that the
Board’s order was supported by substantial evidence, we affirm the district court’s judgment
affirming the Board’s order.

BACKGROUND
                        Kimberly Finder, M.D., became licensed by the Texas Medical Board in 1985. In
1990, she became board certified in dermatology and has been practicing as a dermatologist in
San Antonio since 1992. She currently serves as the medical director for The LipoSurgery Clinic,
a clinic specializing in tumescent liposuction and selective cosmetic facial procedures for women.


 
                        Tumescent liposuction, also referred to as the “tumescent technique,” involves
injecting large volumes of tumescent solution into the targeted fat before it is sucked out. Tumescent
solution contains dilute amounts of lidocaine, a local anesthetic, and epinephrine, used to restrict
bleeding. Though it is generally agreed that tumescent solution must be used in order to categorize
a procedure as tumescent liposuction, the record reflects two distinct opinions regarding the type of
anesthesia permitted during a tumescent liposuction procedure. Dr. Finder claims that tumescent
liposuction is defined as liposuction using only the local anesthesia in the tumescent solution,
without any additional intravenous (IV) sedation or general anesthesia. By contrast, Dr. Mario
Diana, a San Antonio plastic surgeon who practices liposuction, testified at the administrative
hearing that he defines tumescent liposuction as that done using tumescent solution, whether or not
additional IV sedation or general anesthesia is used. Dr. Finder claims that these competing
definitions are part of a long-standing “turf war” between dermatologists, who subscribe to
Dr. Finder’s definition, and plastic surgeons, who agree with Dr. Diana. 
                        Sometime around 2001, Dr. Finder began advertising her practice on the internet at
www.theliposurgeryclinic.com. The website, as viewed by the Board in 2004 (the “website”),
contained a chart entitled “Technique Comparison” which included, among other things, the
following information:


Consideration

Tumescent Technique

IV Sedation & General
Anesthesia



Physicians

Dermatologic Surgeon

Plastic Surgeon



Anesthesia

Local anesthesia

General anesthesia



Procedure

Gentle

Rough and hurried



Recovery Time Post
Surgery

Resume activities after
surgery. 45 min. walk is
recommended day of surgery. 
Minimal blood loss, reduced
bruising and swelling.

More discomfort. Bed rest
for 3-7 days. Hospitalization
may be required.



Scarring

Minimal. Smaller incisions
drain then close naturally.

Increased, Larger incisions
often sutured.



Perforation of internal
body organs

None. Patient is awake. 
Virtually impossible with
gentle suctioning action.

Possible. Patient
unconscious. Punctures can
occur with unconscious
patient due to vigorous
suctioning.



 
                        In 2004, the Board filed a preliminary complaint against Dr. Finder, alleging that the
website violated section 164.052 of the Texas Occupations Code.


 See Tex. Occ. Code Ann.
§ 164.052 (West Supp. 2008). Section 164.052 states, in relevant part:

A physician or an applicant for a license to practice medicine commits a prohibited
practice if that person:
 
. . . .
 
(6) uses an advertising statement that is false, misleading, or deceptive;
 
(7) advertises professional superiority or the performance of professional service in
a superior manner if that advertising is not readily subject to verification;
 
 
Id. § 164.052(6)-(7).
                        After an unsuccessful informal settlement conference, the Board filed a formal
complaint at the State Office of Administrative Hearings. A hearing was held before an
administrative law judge (the “ALJ”) to determine whether statements on Dr. Finder’s website
violated the Board’s rules regarding physician advertising. During the hearing, the Board offered
the expert testimony of Dr. Diana, Dr. Byron Limmer, a San Antonio dermatologic surgeon, and
Karen Porter, an advertising expert. Dr. Finder offered her own testimony, as well as that of experts
Dr. Gerald Bernstein, a Seattle dermatologic surgeon, and Dr. Rhoda Narins, a dermatologic surgeon. 
At the conclusion of the hearing, the ALJ issued a Proposal for Decision (“PFD”), identifying and
describing six statements from the website that she found to be material misrepresentations of
material facts and thus violated the Board’s rules. See 22 Tex. Admin. Code § 164.3(1) (2010) (Tex.
Med. Bd., Misleading or Deceptive Advertising) (including material misrepresentations of material
facts within definition of false, misleading, or deceptive advertising). 
                        The ALJ found that Dr. Finder’s website contained the following material
misrepresentations: (1) plastic surgeons use general anesthesia when performing liposuction, while
she uses local anesthesia; (2) her services virtually eliminate risk, while plastic surgeons use general
anesthesia, which shuts down the brain and requires a machine to keep the lungs functioning;
(3) dermatologists perform liposuction in a gentle manner while plastic surgeons perform the surgery
in a rough and hurried manner; (4) scarring is increased and larger incisions are often sutured when
liposuction is performed under IV sedation or general anesthesia; (5) under general anesthesia,
internal organs can be perforated due to vigorous suctioning; and (6) bed rest is required for three-to-seven days after surgery under general anesthesia, the patient will experience more discomfort after
liposuction under general anesthesia, and bruising and swelling are reduced when surgery is
performed under local anesthesia. The ALJ also concluded that Dr. Finder had advertised
professional superiority or the performance of professional service in a superior manner and that this
advertising was not subject to verification. See Tex. Occ. Code Ann. § 164.052(7). 
                        In its final order, the Board adopted all but one of the ALJ’s findings of fact and
conclusions of law and imposed upon Dr. Finder an administrative penalty of $5,000.


 After
exhausting the administrative remedies before the Board, Dr. Finder sought judicial review of
the Board’s final order in the district court, which affirmed the Board’s order in full. This
appeal followed.
STANDARD OF REVIEW
                        Our review of the Board’s final order is governed by the “substantial evidence”
standard of the Texas Administrative Procedure Act. See Tex. Gov’t Code Ann. § 2001.174 (West
2008). Under this standard, we presume that the Board’s order is supported by substantial evidence,
and Dr. Finder bears the burden of proving otherwise. Texas Health Facilities Comm’n v. Charter
Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984). The complaining party cannot satisfy this
burden merely by showing that evidence preponderates against the agency’s decision. Id. at 452. 
                        We may reverse an agency’s decision that prejudices Dr. Finder’s substantial rights
because the Board’s findings, inferences, conclusions, or decisions (1) violate a constitutional or
statutory provision; (2) exceed the Board’s statutory authority; (3) were made through unlawful
procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial
evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary
or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. 
Tex. Gov’t Code Ann. § 2001.174(2). 
                        To constitute substantial evidence, the reliable and probative evidence in its entirety
must be sufficient such that reasonable minds could have reached the conclusion that the agency
must have reached to justify the disputed action. Heat Energy Advanced Tech., Inc. v. West Dallas
Coal., 962 S.W.2d 288, 294-95 (Tex. App.—Austin 1998, pet. denied) (citing Texas State Bd. of
Dental Exam’rs v. Sizemore, 759 S.W.3d 114, 116 (Tex. 1988)). We review the Board’s legal
conclusions for errors of law and its findings of fact for support by substantial evidence. Id. We
may not substitute our judgment for that of the Board on the weight of the evidence on questions
committed to agency discretion. Charter Medical, 665 S.W.2d at 452; see also Tex. Gov’t Code
Ann. § 2001.174. 
                        The test is not whether we believe the Board’s decision was correct, but whether the
agency’s factual findings are reasonable “in light of the evidence from which they were purportedly
inferred.” Granek v. Texas State Bd. of Med. Exam’rs, 172 S.W.3d 761, 778 (Tex. App.—Austin
2005, no pet.) (quoting John E. Powers, Agency Adjudications 163 (1990)). The factfinder, here the
ALJ, determines the credibility of witnesses and the weight to give their testimony. Id. We may not
set aside an agency decision merely because testimony was conflicting or disputed, or because it
did not compel the agency’s decision. Sanchez v. Texas State Bd. of Med. Exam’rs, 229 S.W.3d 498,
510 (Tex. App.—Austin 2007, no pet.) (citing Firemen’s & Policemen’s Civil Serv. Comm’n
v. Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1996)).

DISCUSSION
                        In four issues on appeal, Dr. Finder argues that the district court erred in affirming
the Board’s final order because: (1) the Board’s order is not supported by substantial evidence;
(2) the ALJ abused her discretion in admitting and relying on the testimony of the Board’s experts;
(3) the Board applied an incorrect and unpublished standard to conclude that Dr. Finder disobeyed
its rules on physician advertising, violating Dr. Finder’s right to due process; and (4) the Board failed
to address Dr. Finder’s affirmative defense of commercial speech.

Substantial Evidence
                        In her first issue on appeal, Dr. Finder contends that the Board’s findings are not
supported by substantial evidence. Though Dr. Finder frames her first issue in substantial evidence
terms, it actually contains two distinct and separate challenges to the Board’s order. First, she
contends that the findings of underlying fact stated in the order do not fairly support the agency’s
ultimate conclusions. Second, she claims that the findings of underlying fact do not have reasonable
support in the evidence adduced at the evidentiary hearing. Both of these challenges are permitted
within our review of the Board’s decision. See Charter Medical, 665 S.W.2d at 452; United
Res. Recovery, Inc. v. Texas Water Comm’n, 815 S.W.2d 797, 801 (Tex. App.—Austin 1991,
writ denied).
                        The Board is authorized to impose an administrative penalty of not more than $5,000
per violation against a licensee who has violated a Board rule. See Tex. Occ. Code Ann.
§ 165.003(a) (West 2004). Because the Board imposed a $5,000 penalty upon Dr. Finder, any single
violation is sufficient to support the Board’s order. For this reason, to affirm the district court’s
judgment, we need only determine that substantial evidence supports the conclusion that at least one
of Dr. Finder’s statements violated the Board’s rules. We will begin by evaluating whether
substantial evidence exists to support the conclusion that the “procedure” section of the “Technique
Comparison” chart is false, misleading, or deceptive advertising. 

Procedural Challenge to Findings of Fact
                        Dr. Finder first claims that the Board’s order did not contain sufficient underlying
findings to support its ultimate conclusions. The Board’s finding of fact number five recreates a
portion of the “Technique Comparison” chart, including the “procedure” section. Under the
“Tumescent Technique” column, the procedure is described as “Gentle,” whereas under the “IV
Sedation and General Anesthesia” column, it is described as “Rough and hurried.” Finding of fact
number eight states, “Whether a physician is gentle or rough and hurried is not specific to the
anesthesia used or the physician’s certification.” The ultimate conclusions reached by the Board
include: “(7) Respondent used an advertising statement that was false, misleading, or deceptive as
described in [Tex. Occ.] Code § 164.052(6) and 22 [Tex. Admin. Code] § 164.3(1); and
(8) Respondent has made material misrepresentations of material facts, which cannot be
substantiated, as described in 22 [Tex. Admin. Code] § 164.3(7).”
                        Because the Texas Occupations Code does not define false, misleading, or deceptive
advertising, we turn to the Board’s rules for guidance. They define advertising as information
communicated to the public in any manner designed to attract public attention to a physician’s
practice. 22 Tex. Admin. Code § 164.2 (2010) (Tex. Med. Bd., Definitions). This includes
information on the internet. Id.
                        The Board’s rules further state that physician advertising is false, misleading, or
deceptive, if it contains, among other things, “material false claims or misrepresentations of material
facts which cannot be substantiated.” 22 Tex. Admin. Code § 164.3(1) (2010) (Tex. Med. Bd.,
Misleading or Deceptive Advertising). 
                        Dr. Finder argues that the Board’s findings did not fairly and reasonably support the
Board’s conclusions because the Board’s order does not specifically identify which statements on
the website are “false, misleading, or deceptive” and “material misrepresentations of material facts”
or why they are such. 
                        Proper underlying findings of fact should be clear, specific, non-conclusory, and
supportive of the ultimate statutory finding. Charter Medical, 665 S.W.2d at 452. Mere recitals of
testimony or references to or summations of the evidence are improper. Id. Such findings should
be stated as the agency’s findings. Id. Dr. Finder argues that finding of fact number five is a mere
recitation of the evidence. This finding contains, among other things, the “procedure” section of the
“Technique Comparison” chart where, under the “tumescent technique,” the procedure is described
as “Gentle,” and under the “IV Sedation and General Anesthesia” column, it is “Rough and hurried.” 
Rather than being a mere recitation of the evidence, this language constitutes the necessary finding
around which the Board’s entire disciplinary proceeding revolves. Furthermore, in the absence of
a finding of fact identifying which of Dr. Finder’s statements the Board considered, Dr. Finder would
not have been adequately informed of the basis for the Board’s decision. For this reason, the Board’s
identification of the statements relied upon in reaching its ultimate conclusion qualifies as a proper
finding of fact. 
                        Similarly, Dr. Finder argues that finding of fact number eight is also a recitation of
the evidence. Finding of fact eight states that “whether a physician is gentle or rough and hurried
is not specific to the anesthesia used or the physician’s certification.” The Board did not, however,
simply restate testimony. Instead, it synthesized the relevant testimony of Dr. Finder, Dr. Diana,
Dr. Limmer, Dr. Bernstein, and Dr. Narins and stated its resultant finding.
                         Because the Board found that (1) Dr. Finder’s website characterized the procedures
under the tumescent technique as gentle and under IV sedation and general anesthesia as rough and
hurried, and (2) whether liposuction was gentle or rough and hurried was not specific to the
anesthesia used or physician’s certification, the Board’s conclusion that the “procedure” section on
Dr. Finder’s website constituted a material misrepresentation of a material fact was reasonably
supported by the underlying findings of fact. 
                        Dr. Finder also argues that she should not be “left to guess ‘how’ and ‘why’ with
respect to each of the ultimate conclusions,” citing Texas Health Facilities Comm’n v. Presbyterian
Hospital North, 690 S.W.2d 564 (Tex. 1985). In Presbyterian Hospital, the commission in question
made six underlying findings regarding a proposed facility, identifying the number of beds and
square feet of the new facility, the cities and counties that would be served, and the forecasted
occupancy rates of the facility. Id. at 566. The supreme court held that these findings did not
support the ultimate conclusion that the proposed facility was not necessary to meet the health care
needs of the medical service area. Id. at 567. The findings of fact in Dr. Finder’s case do not require
the inferential leap necessary in Presbyterian Hospital. Here, the Board’s findings included a
specific statement from Dr. Finder’s website and a finding of fact which contradicted that statement. 
 No additional information is necessary to reach the Board’s conclusion that the website contained
material misrepresentations of material fact. 
                        The fact that the Board did not explicitly list the violating statements in its order does
not cause it to fail the substantial evidence review.


 An agency is not required to indicate which
underlying facts support each ultimate finding, as long as the reviewing court can fairly and
reasonably say that the underlying or basic facts support the agency’s conclusion on the ultimate or
statutory criteria. See Smith Motor Sales, Inc. v. Texas Motor Vehicle Comm’n, 809 S.W.2d 268,
271-72 (Tex. App.—Austin 1991, writ denied). The findings should be sufficient to “inform the
parties and the courts of the basis for the agency’s decision so that the parties may intelligently
prepare an appeal and so that the courts may properly exercise their function of review.” Goeke v.
Houston Lighting & Power Co., 797 S.W.2d 12, 15 (Tex. 1990). The Board’s findings here do this,
as evidenced by the fact that both parties’ briefs identified specific statements implicated by the
Board’s findings of fact. Furthermore, there is no precise form in which an agency must articulate
its underlying findings and the reviewing court may not subject the agency’s order to a
“hypertechnical standard of review.” Id.; see also State Banking Bd. v. Allied Bank Marble Falls,
748 S.W.2d 447, 448-49 (Tex. 1988).
                        For these reasons, we reject Dr. Finder’s contention that the Board’s ultimate
conclusion is not supported by its underlying findings of fact.


Substantial Evidence
                        Dr. Finder further argues that the Board’s order does not meet the substantial evidence
standard because the record does not support the Board’s underlying findings of fact. In our analysis,
we again look first to the “procedure” section of Dr. Finder’s “Technique Comparison” chart.
                        Dr. Finder does not allege that finding of fact number five is unsupported by the
record, as it is taken directly from the Board’s exhibit number four. She does, however, contest the
sufficiency of finding of fact number eight, “whether a physician is gentle or rough and hurried is
not specific to the anesthesia used or the physician’s certification,” because she “dispute[s] that the
statement[] attributed to her appear[s] on her website.” However, this finding of fact is supported
by the testimony of Dr. Diana, who testified that the language contained on Dr. Finder’s website
suggested that the roughness of a procedure depended on the type of doctor and anesthesia used.                         Dr. Finder further argues that finding of fact number eight disregards both
Dr. Finder’s testimony that the type of anesthesia correlates with the speed of a liposuction procedure
(and thus, the roughness and hurriedness of the procedure) and Dr. Bernstein’s testimony that a
surgeon must be gentle when using only local anesthesia because the patient is fully awake and
aware. However, additional testimony contradicted these statements. Dr. Limmer testified that
whether a physician is rough and hurried is not specific to the liposuction technique used, and
Dr. Diana testified that the way in which a procedure is performed depends on the physician doing
it. Dr. Finder’s own expert, Dr. Bernstein, said it was “very, very hard” to characterize exactly what
the words gentle and rough and hurried mean. He noted that a physician could be gentle while
performing liposuction under general anesthesia. Dr. Narins, a dermatologist, testified that the way
a surgeon performs a surgery depends on the procedure one is taught. She did testify, however, that
surgery without general anesthesia is less aggressive. 
                        Though Dr. Finder claims that the ALJ ignored certain testimony, additional
contradicting testimony required her to make a factual determination regarding which testimony to
believe. This Court may not make a determination as to the credibility of witnesses or weight to be
given to conflicting testimony. Such questions are solely the purview of the ALJ as trier of fact. See
Sanchez, 229 S.W.3d at 510; Granek, 172 S.W.3d at 778. Here, the ALJ resolved the existing
conflict in favor of the Board. Given this conflicting testimony and the fact that the ALJ determines
the credibility of witnesses and the weight to give their testimony, we hold that finding of fact
number eight is reasonably supported by the record.
                        As both the Board’s conclusion that the “procedure” section of Dr. Finder’s website
was false, misleading, or deceptive and its underlying findings of fact are supported by substantial
evidence, we overrule Dr. Finder’s first point on appeal.




 
Expert Testimony
                        In her second issue on appeal, Dr. Finder argues that the ALJ abused her discretion
in admitting and relying on the testimony of the Board’s experts. She first contends that the ALJ
should have excluded Porter’s testimony because she was not qualified to testify about whether the
medical statements on Dr. Finder’s website were misleading because she has no medical experience. 
However, even assuming without deciding that Porter’s testimony was improper, the Board’s
conclusions would still be sufficiently supported by the remaining evidence. Dr. Finder alleges that
Porter was “the only expert who purported to offer an opinion about what consumers would think
about the website.” While this is true, testimony regarding consumer thoughts or behavior was not
necessary to support the conclusion that the “gentle” versus “rough and hurried” language was false,
misleading, or deceptive. The Board needed only to show that the statement was a material
misrepresentation of a material fact that could not be substantiated. See 22 Tex. Admin. Code
§ 164.3(1). As discussed above, substantial evidence from the testimony of the various medical
experts supports this conclusion without consideration of Porter’s testimony.
                        Dr. Finder also claims that a conflict of interest made it improper for the ALJ to allow
Dr. Diana’s and Dr. Limmer’s testimony because they were competitors of Dr. Finder in
San Antonio. Dr. Finder cites Board rule 182.8, which states that a potential conflict of interest
exists, and thus the expert is disallowed from testifying, if the expert is in the same geographical
medical market as the subject of the complaint and is in direct competition with the physician or
knows the physician. See 22 Tex. Admin. Code § 182.8(a)(2)(A) (2010) (Tex. Med. Bd., Expert
Physician Reviewers). Dr. Finder concedes that this statute applies only to experts for standard-of-care disciplinary actions rather than advertising ones, but argues that “a conflict is a conflict,” and
that no rational basis exists for a different standard in Dr. Finder’s case. 
                        The Board is authorized to adopt rules to govern its own proceedings and could one
day extend this conflict-of-interest rule to advertising cases, but it has not yet done so. See Tex. Occ.
Code § 153.001(1) (West 2004). Currently, no statute or rule exists preventing testimony by
competing physicians in non-standard-of-care disciplinary actions. Instead, the potential biases of
the Board’s witnesses fall within the ALJ’s judgments regarding the credibility of the experts and
the weight to be afforded their testimony. Our standard of review precludes us from second-guessing
such determinations. See Granek, 172 S.W.3d at 778.
                        For these reasons, we overrule Dr. Finder’s second point on appeal.

Use of an “Unpublished” Standard
                        In her third issue on appeal, Dr. Finder argues that the Board applied a “surprise”
unpublished standard in evaluating Dr. Finder’s advertising, which violated her right to procedural
due process. She claims that rather than the published “false, misleading, or deceptive” standard,
Dr. Limmer used an “unfair comparison” standard, while Dr. Diana used a standard that deemed all
comparisons misleading unless they are always true. She claims that the Board’s acceptance of
testimony by these experts equates to the Board holding Dr. Finder to these standards rather than the
“false, misleading, or deceptive” standard purported in the Board’s order.
                        While Dr. Finder frames this issue as a procedural due process question in her brief,
it is better characterized as a challenge to the substantial evidentiary support for the Board’s order. 
See, e.g., West End Pink, Ltd. v. City of Irving, No. 05-00-00690-CV, 2001 Tex. App. LEXIS 7261,
at *8 (Tex. App.—Dallas Oct. 30, 2001, no pet.) (not designated for publication) (interpreting due
process argument as complaint that agency’s order was not supported by substantial evidence); City
of Dallas v. Furrh, 541 S.W.2d 271, 273 (Tex. Civ. App.—Dallas 1976, writ ref’d n.r.e.) (claim that
city council violated claimant’s constitutional right because its decision to deny license was arbitrary
and discriminatory reviewed under substantial-evidence rule).
                        Dr. Finder claims that, because the Board’s experts applied a lesser standard to reach
their conclusions regarding whether the statements were false, misleading, or deceptive, their
conclusions do not support the same conclusions by the Board. Assuming without deciding that
Dr. Limmer and Dr. Diana did define the term “misleading statement” differently than the published
standard, it does not follow that the Board necessarily applied those same standards. Nothing in the
Board’s order indicates that it applied a standard other than the “false, misleading, or deceptive”
standard as defined by the Board’s rules. Furthermore, the fact that Dr. Limmer and Dr. Diana may
have used differing definitions of “false, misleading, or deceptive” in their ultimate conclusions does
not affect the ability of the Board to rely on the remainder of their testimony. The Board may still
rely on Dr. Diana’s and Dr. Limmer’s statements concluding that the language on Dr. Finder’s
website compared types of anesthesia and physician specialty and their testimony regarding the
relationship between anesthesia used, physician’s certification, and roughness of the procedure. This
evidence supports the Board’s conclusion that the “procedure” statements were false, misleading,
or deceptive without reliance upon Dr. Diana’s and Dr. Limmer’s ultimate conclusions that the
statements were misleading.
                        Because the Board’s order does not contain any language suggesting that it applied
an incorrect standard, we overrule Dr. Finder’s third point on appeal.



Commercial Speech Claim
                        Finally, Dr. Finder contends that the Board committed reversible error by applying
the wrong legal standard to analyze her commercial speech claim. Though we had some difficulty
discerning the exact basis of Dr. Finder’s commercial speech claim on appeal, we perceive her
argument to be that the Board’s restrictions on her commercial speech are an unconstitutional effort
to protect plastic surgeons. She argues, as she did in her third point on appeal, that the Board did
not apply a “false, misleading, or deceptive” standard, but instead applied an “unfair comparison”
and/or “potentially misleading” standard. This improper standard, she claims, acts as a pretext
allowing the Board to “protect other medical doctors,” which is not a legitimate reason to limit her
commercial speech. She further claims that the Board applied an improper “readily subject to
verification” standard on all of the statements on Dr. Finder’s website, specifically arguing that the
Board found several statements to be in violation of its rules “based solely on the fact that certain
statements cannot be factually verified.”
                        The Board responded to Dr. Finder’s commercial speech claim by stating that it may
prevent the dissemination of commercial speech that is false, deceptive, or misleading, and that it
has done so here.
                        We have already determined that substantial evidence exists to support the Board’s
order finding at least one of Dr. Finder’s statements false, misleading, or deceptive. We have also
rejected Dr. Finder’s argument that the Board applied a standard other than the published “false,
misleading, or deceptive” standard. 
                        The United States Supreme Court has held that states may restrict false, deceptive,
or misleading commercial speech. See Ibanez v. Florida Dep’t of Prof’l Regulation, 512 U.S. 136,
142 (1985); Friedman v. Rogers, 440 U.S. 1, 9 (1979). It further recognized that a statement may
be prohibited if it is misleading or deceptive, even if not provably false. Friedman, 440 U.S. at 9-10
(“Obviously, much commercial speech is not provably false, or even wholly false, but only deceptive
or misleading. We foresee no obstacle to a State’s dealing effectively with this problem.”); see also
In re R.M.J., 455 U.S. 191, 203 (1982) (“Truthful advertising related to lawful activities is entitled
to the protections of the First Amendment. . . . Misleading advertising may be prohibited entirely.”). 
Because the Board is permitted to restrict false, misleading, or deceptive commercial speech, and
substantial evidence supports its finding that Dr. Finder’s website contained at least one false,
misleading, or deceptive statement, we reject Dr. Finder’s commercial speech claim.
                        Additionally, Dr. Finder argues that the Board erred in failing to address her
commercial speech defense in its findings of fact or conclusions of law. Though Dr. Finder argues
that the Board must, under the Administrative Procedure Act, enter findings of fact and conclusions
of law on an affected party’s affirmative defenses, she cites to no statutes or case law that would
support this assertion. 
                        An agency is not required to state the facts on which it did not rely for support of its
ultimate findings, nor is it required to make factual findings concerning reasons why it rejected an
argument or recommendation. See Cities of Abilene v. Public Util. Comm’n of Tex., 854 S.W.2d
932, 946 (Tex. App.—Austin 1993) (finding nothing in predecessor to Administrative Procedure Act
that required agency to explain rejection of expert testimony), aff’d in part and rev’d in part on other
grounds, 909 S.W.2d 493 (Tex. 1995); Clear Creek Sch. Dist. v. Comm’r of Educ., 775 S.W.2d 490,
493 (Tex. App.—Austin 1989, no writ) (“An agency is not, however, required to state facts that it
rejected or did not rely upon to support its order.”). It is only required that substantial evidence
reasonably support the conclusions that an agency does assert. See Tex. Gov’t Code Ann.
§ 2001.141. As discussed in response to Dr. Finder’s first point of error, the Board’s findings of fact
and conclusions of law are reasonably supported by substantial evidence. Therefore, Dr. Finder’s
fourth point is overruled.
                        Because there is substantial evidence to support both the Board’s underlying findings
of fact and its ultimate conclusion that the statements in the “procedure” section of the website’s
“Technique Comparison” chart are false, misleading, or deceptive, the district court did not err in
affirming the Board’s final order.

CONCLUSION
                        We affirm the district court’s judgment.
 
                                                                        __________________________________________
                                                                        Diane M. Henson, Justice
Before Chief Justice Jones, Justices Puryear and Henson
Affirmed
Filed: November 18, 2010